[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, the plaintiff Laverne Salvati seeks damages from the defendant for injuries sustained by the minor plaintiff John Salvati on June 7, 1989. A two court revised complaint was filed, alleging negligence upon the part of the defendant for the injuries sustained by the minor plaintiff John Salvati and for recovery by the plaintiff Laverne Salvati for medical expenses incurred as a result of the alleged negligence of the defendant.
The defendant has filed special defenses to the plaintiffs' complaint and a counterclaim for damages arising out of the medical care it extended to the plaintiff after his injuries and damages resulting from the trespass itself. At the closing argument, the defendant indicated it was seeking nominal damages only.
The plaintiff's trial counsel was confronted with inconsistent versions of what happened on the morning of the plaintiff's fall and just where it occurred. The original complaint indicated that the plaintiff purchased a ticket to Hershey Lake Compounce and was admitted into the park and was told that the park didn't open until 11 a.m., and that he should return to the main gate. He returned to the gate and proceeded down a path which crossed the railroad tracks and he fell as he attempted to cross the tracks. According to the Hershey Lake Compounce Accident memo, the plaintiff indicated he tripped over a rock, striking his elbow on another rock. The amended complaint contains a completely different version of what was alleged to have happened that morning.
The plaintiff John Salvati and his friend, Mark Lewis Webster, went to the Lake Compounce Amusement park on the morning of June 7, 1989. They were driven to the park by the uncle of Mark Webster and were dropped off at the park at about 9:30 a.m. At that time, the park had not opened and the plaintiff and his friend waited around for a half hour or 45 minutes. They started walking down the public road in a southerly direction outside the park. They noticed that inside the park area there were train CT Page 5565 tracks on a narrow gauge railroad. The boys noticed that a portion of the park fence had been "matted down" at one point and they decided to cross over the fence and walk along the railroad line. Mark Webster said he didn't see any no trespassing signs on the park property. They started walking on the railroad line with the plaintiff John Salvati, walking about 10 feet behind Mark Webster. Mark said he heard the plaintiff John fall and he stated John had hurt his elbow. The place where he fell was on a little bridge and that there was no soil between the railroad ties on the bridge whereas there had been prior to their approach to the bridge. He stated that subsequent to John's fall, they bought their tickets and that they went to the first aid station at the park.
The plaintiff presented the testimony of Gregory G. Marshall, a former security guard at the park, who indicated that people did attempt to fish in the lake and that some did walk over the train tracks and that on occasions they were arrested by the security guards for trespassing. He admitted that there were no trespassing signs that were easily visible in the wooded and remote area outside the fenced in amusement area. He stated he considered calling the police because the boys were doing something they shouldn't have been doing.
John Salvati indicated that he had no trouble walking down the railroad tracks on the railroad ties and gravel. When his foot fell through the ties, his crotch landed on the ties and his elbow hit the rail and was injured. After he fell, he was taken by security guards to the nurse's station and then was taken to the Bristol Hospital where he received a splint. At the time of his fall, the plaintiff was one month short of his 13th birthday.
The plaintiff told the nurse that he slipped on a rock and he admitted that he did not tell the truth in a deposition that had been taken prior to trial. He also stated at trial that when he fell, he was not looking at the tracks where he was walking, but that he looked at the tracks after he got up.
The plaintiff stated that he was scared and he didn't know why he told the nurse that he fell outside the park.
The defendant introduced the testimony of Tom Shellenberger, manager of Safety Security at Hershey Park for 4 years. He testified that there were no trespassing signs on every other tree along the road where the boys crossed over. He stated that the CT Page 5566 fence was in good condition, but that it was crunched down a little and that one could climb over it.
It has been held that if the plaintiff is a child trespasser a landowner may owe a duty under certain circumstances. Yeski v. Avon Old Farms School, Inc., Conn. Appellate 195, 198. As concerns child trespassers injured by artificial conditions, Connecticut courts have adopted the criteria set forth in 339 of the Restatement of Torts to determine if a duty exists.
The criteria which must be satisfied in order for a landowner to be held to have a duty to a child trespasser are: 1) The landowner must have known or had reason to know that children were likely to trespass in the area where the child was injured; 2) the landowner should have realized the artificial condition posed an unreasonable risk of death or serious bodily harm to child trespassers; 3) The child, because of his youth, did not appreciate the danger posed by the condition; 4) The utility of maintaining the condition and the burden of removing it was slight compared to the danger it posed to children and 5) The landowner failed to exercise reasonable care to eliminate the danger or protect the plaintiff. Yeski, supra.
After an examination of the evidence presented in this matter, the court concludes that the defendant may have known or had reason to know that children were likely to trespass in the area where the plaintiff fell and was injured, but that the owner should not have realized that the condition of the railroad tracks could reasonably be anticipated to cause death or serious injury to child trespassers. And the court is not convinced that the plaintiff, because of his youth, did not appreciate the danger posed by the condition of the railroad tie. The question involved is whether the condition complained of was one which the defendant knew or realized or should have known or realized involved an unreasonable risk of death or serious bodily harm to trespassing children. Krause v. Almore Homes, Inc., 149 C 614. The landowner cannot be held to be an insurer of the safety of young children who suffer injury from a normally innocuous condition on his property. Schiavone v. Falango, 149 C 293, 298. Also, the court is of the opinion that the plaintiff, one month short of his 13th birthday, should have appreciated the general danger of walking on railroad tracks, especially when they were crossing a minor stream of water.
In a factual situation analogous to our present case when a CT Page 556710-1/2 year old boy was injured when he and his 12 year old companion climbed up a dirt embankment at a point where (railroad) trestles meet the side of the hill and the fence terminates, the court in Hockey v. Duluth Missabe Iron Range Railing Co.,117 N.W.2d 304, 317, held that if one were to call a railroad trestle enclosed by a fence "highly dangerous" as an artificial condition then — as many decisions have indicated — every tree, fence, house or other object which children can climb would be a source of potential liability and this would create an intolerable burden on society.
In the light of the position taken by the court, as set forth above, Judgment may enter in favor of the defendant on the plaintiffs' complaint. Judgment may also enter in favor of the plaintiffs on the defendant's counterclaim.
/s/ O'Brien O'BRIEN, STR